**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 97-10895

AMERICAN AIRLINES, INC.

Plaintiff-Appellee;

VERSUS

ALEXIS M. HERMAN, SECRETARY OF LABOR, UNITED STATES
DEPARTMENT OF LABOR

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Texas

May 17, 1999

Before Herman G. GARZA, POLITZ, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

The district court granted summary judgment declaring that the
Secretary of the United States Department of Labor ("the
Secretary") does not have authority under § 503 of the
Rehabilitation Act of 1973 ("the Act") to enforce an agreement by
American Airlines, Inc. ("American") not to discriminate against
persons with disabilities as required by its contract with the
government. Correlatively, the district court denied the
Secretary's motion to dismiss American's declaratory judgment

action because it failed to exhaust its administrative remedies under § 10(c) of the Administrative Procedures Act ("APA"). The Secretary appealed. We reverse the district court's judgments and dismiss American's suit for lack of jurisdiction.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

In February 1989, the Office of Federal Contract Compliance Programs ("the OFCCP") of the Department of Labor ("the DOL") conducted a random compliance review of American's employment practices at its Nashville, Tennessee hub to evaluate American's compliance with its government contract under § 503 of the Rehabilitation Act of 1973, 29 U.S.C. § 793 (1988). Since its original enactment, § 503 has required covered federal contractors to "take affirmative action to employ and advance in employment" qualified disabled individuals. 29 U.S.C. § 793(a), Pub. L. No. 93-112, 87 Stat. 355, 393 (1973). The Secretary's 1974 regulations implementing § 503 require, *inter alia*, that every covered government contract include a clause providing that "[t]he contractor will not discriminate against any employee or applicant for employment because of physical or mental handicap[1] in regard to any position for which the employee or applicant is qualified. The contractor agrees to take affirmative action to employ, advance in

---

[1] The Rehabilitation Act Amendments of 1992, Pub. L. No. 102-569, 106 Stat. 43444 (Oct. 29, 1992), amended the 1973 Act, 29 U.S.C. §§ 701-797b, substituting the term "individuals with disabilities" for "individuals with handicaps."

2

employment and otherwise treat qualified handicapped individuals without discrimination based upon their physical or mental handicap. . . ." 39 Fed. Reg. 20566, 20567 (1974).

Based on the OFCCP's compliance review, in November 1989, OFCCP issued a Notice of Violations alleging that American had unlawfully discriminated against 96 applicants for non-flight positions on the basis of their mental or physical disabilities.

Although none of the applicants filed a complaint, the OFCCP in April 1994 filed an administrative complaint against American, alleging that it had "failed or refused to comply with Section 503 and the Secretary of Labor's rules and regulations" by implementing certain hiring practices, and therefore had violated American's contractual obligations to the federal government. The OFCCP's administrative complaint prayed for an injunction declaring American ineligible for government contracts until it complied with the provisions of § 503, DOL regulations, and the government contract; and an order requiring American to provide relief to each of the 96 alleged victims of discrimination, including back pay, front pay, lost benefits, instatement, and retroactive seniority.

In the administrative proceeding, American moved for summary judgment on four grounds, urging that: (1) § 503 only requires affirmative action, and does not prohibit discrimination (the "no anti-discrimination authority" issue); (2) § 503 does not authorize back pay or other individual relief (the "back pay" issue); (3) § 503 does not authorize the OFCCP to conduct compliance reviews (the

"compliance review" issue); and (4) the OFCCP's administrative action was untimely as being filed after the 180-day filing period (the "timely filed" issue).

In September 1995, the Administrative Law Judge ("ALJ"): (1) granted summary judgment to American on the "compliance review" issue, concluding that neither § 503 nor its implementing regulations authorize the OFCCP to initiate investigative and enforcement proceedings in the absence of a written complaint by a disabled applicant; (2) denied American's motion on the "no anti-discrimination authority" issue, concluding that the DOL's interpretation of the affirmative action requirement of § 503 as including an obligation not to discriminate was reasonable and within the grant of authority from Congress; (3) denied American's motion on the "back pay" issue, concluding that § 503 authorizes the OFCCP to seek relief for individual victims of discrimination; and (4) concluded that the "timely filed" issue was moot.

Based on the ALJ's conclusion that the OFCCP's administrative action against American was founded on an unauthorized compliance review, the ALJ recommended dismissal of the administrative complaint against American.

Both parties appealed from the ALJ's ruling to the then-highest authority within the DOL, the Assistant Secretary for Employment Standards ("Assistant Secretary").[2] In April 1996, the

_____

[2] The authority to issue final DOL decisions under § 503 has since been transferred from the Assistant Secretary to the

4

Assistant Secretary issued a Decision and Remand Order, ruling against American and in favor of OFCCP on all four issues, concluding that: (1) the term "affirmative action to employ and advance in employment qualified individuals with handicaps" includes a duty not to discriminate against members of the class protected by § 503; (2) the Act and its implementing regulations authorize the DOL to investigate a contractor's compliance with § 503 in addition to investigating individual complaints; (3) § 503 authorizes the Secretary to enforce the Act to obtain individual relief for victims of discrimination, including back pay; (4) the regulations implementing the Act provide no time limits for filing formal administrative complaints by the Secretary arising out of compliance reviews. The Assistant Secretary remanded the case to the ALJ for further proceedings.

In September 1994, American filed this action in federal district court against Robert B. Reich, Secretary of the Department of Labor, seeking declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202,[3] challenging the OFCCP's authority under § 503 to bring an administrative action against American based on

---

Administrative Review Board. *See* 61 Fed. Reg. 19982 (1996).

[3] When this action was filed, Mr. Reich was the Secretary of Labor, and his name was included in the caption of the complaint instead of the present Secretary of Labor, Alexis Herman. During the interim period between Mr. Reich's resignation and the confirmation of Ms. Herman, Cynthia Metzler was Acting Secretary of Labor, and the federal court action was captioned *American Airlines, Inc. v. Metzler.*

5

its discrimination against disabled job applicants.

The DOL filed a motion for summary judgment seeking dismissal of American's complaint on the grounds that American had failed to exhaust its administrative remedies. The district court denied the motion.

In February 1997, the DOL filed a motion for summary judgment seeking an order declaring that § 503 authorizes the OFCCP to conduct random compliance reviews. Thereafter, American filed a motion for summary judgment declaring that § 503 does not authorize the OFCCP to seek individual remedies from American, such as back pay.

On April 8, 1997, the district court granted partial summary judgment to American, issuing a declaratory judgment ruling that "although § 503 does not authorize the DOL to prosecute American for disability discrimination, it does authorize the DOL to enforce American's contractual obligations." *American Airlines, Inc. v. Metzler,* 958 F. Supp. 273, 277 (N.D. Tex. 1997). According to the district court, this section "neither requires affirmative action nor prohibits discrimination. Section 503 simply mandates that federal departments and agencies insert a contractual provision into certain federal contracts with outside contractors. It places the onus on the government, not on the private contractor." *Id.* at 276.

On July 24, 1997, the district court entered final judgment

for American. *American Airlines, Inc. v. Herman,* 971 F. Supp. 1096 (N.D. Tex. 1997). The court decreed that: (1) § 503 does not authorize the DOL to seek individual remedies, including back pay and reinstatement, for alleged discrimination by American; (2) § 503 does not authorize the DOL to subject American to random compliance review for alleged discrimination against individuals with disabilities at American's Nashville facility; (3) the Assistant Secretary's April 1996 Decision and Remand Order in the ongoing administrative proceedings is set aside insofar as it conflicts with the court's July 24 or the April 8 orders; (4) the DOL is permanently enjoined from administratively prosecuting American; and (5) the issue of whether the administrative complaint was timely is rendered moot. The Secretary timely appealed.

## II. DISCUSSION

### A. Final Agency Action and Exhaustion of Administrative Remedies

The Secretary argues that the district court erred in denying the Secretary's motion for summary judgment based on American's failure to exhaust administrative remedies. Specifically, the Secretary argues that because only four of American's 24 affirmative defenses have been addressed in the administrative proceeding, and because there has been no hearing and no adjudication of liability or remedy, there has been no "final agency action" under § 10(c) of the APA. Therefore, according to the Secretary, the district court, and hence, this court, lack

7

subject matter jurisdiction.

While the Secretary argues that the Supreme Court's "finality factors" should govern our decision,[4] American argues that we should apply the "exhaustion doctrine" to decide this issue.[5]

Courts often decline to review an agency action because it is not final, it is not ripe, or the petitioner did not exhaust available administrative remedies. In many circumstances, the three doctrines are difficult to distinguish, because the same considerations of timing and procedural posture often can support a holding based on ripeness, finality, or exhaustion. KENNETH C. DAVIS & RICHARD J. PIERCE, JR., 2 ADMINISTRATIVE LAW TREATISE § 15.1 at 305–06 (3d ed. 1994) (citing *Ticor Title Ins. Co. v. Federal Trade*

---

[4] According to the Secretary, these "finality" factors are: (1) whether the challenged action is a definitive statement of the agency's position; (2) whether the action has the status of law with penalties for noncompliance; (3) whether the impact on the plaintiff is direct and immediate; and (4) whether immediate compliance is expected. The Secretary cites *Jobs, Training & Services, Inc. v. East Texas Council of Governments,* 50 F.3d 1318, 1324 (5th Cir. 1995) (citing "ripeness" factors in *Abbott Labs. v. Gardner,* 387 U.S. 136, 149-53 (1967)).

[5] American argues that none of the following purposes of exhaustion are implicated in this case: (1) to avoid premature interruption of the administrative process; (2) to allow the agency to develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging parties to ignore its procedures. American cites *McKart v. United States,* 395 U.S. 185, 193-95 (1969).

8

*Comm'n*, 814 F.2d 731 (D.C. Cir. 1987), in which each of the panel judges relied on a different doctrine in reaching the same result). "Finality and exhaustion are particularly difficult to distinguish. Most cases can be resolved as easily through use of either of the two doctrines. If the petitioner has not yet exhausted an available administrative remedy, the agency's action is not yet final." *Id.* at 306.

When, as here, the relevant administrative agency statutory provisions do not directly provide for judicial review, the APA authorizes judicial review only of "final agency action." 5 U.S.C. § 704; *Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 882 (1990). If there is no "final agency action," as required by the controlling statute, a court lacks subject matter jurisdiction. *Veldhoen v. United States Coast Guard,* 35 F.3d 222, 225 (5th Cir. 1994).

"Agency action" is defined by the APA as including "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). "'Order' means the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making but including licensing." 5 U.S.C. § 551(6). *See Federal Trade Comm'n v. Standard Oil Co. of Calif.,* 449 U.S. 232, 238 n.7 (1980).

Although the APA's finality requirement is "flexible" and "pragmatic," *Abbott Labs.,* 387 U.S. at 149-50:

> [a]s a general matter, two conditions must be satisfied for an agency action to be "final": First, the action must mark the "consummation" of the agency's decisionmaking process[] -- <u>it must not be of a merely tentative or interlocutory nature</u>. And second, the action must be one by which "rights or obligations have been determined," or from which "legal consequences will flow[.]"

*Bennett v. Spear,* 520 U.S. 154, 177-78 (1997) (emphasis added) (quoting *Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp.,* 333 U.S. 103, 113 (1948) ("[A]dministrative orders are not reviewable unless and until they impose an obligation, deny a right or fix some legal relationship <u>as a consummation of the administrative process</u>." (emphasis added)); *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic,* 400 U.S. 62, 71 (1970)).

On the other hand, the Supreme Court has defined a nonfinal agency order as one that "does not itself adversely affect complainant but only affects his rights adversely on the contingency of future administrative action." *Rochester Tel. Corp. v. United States,* 307 U.S. 125, 130 (1939). Under the APA, agency action that is merely "preliminary, procedural, or intermediate" is subject to judicial review at the termination of the proceeding in which the interlocutory ruling is made. 5 U.S.C. § 704[6]; *Standard*

---

[6] Section 10(c) of the APA provides in part: " A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency

*Oil,* 449 U.S. at 245.  The APA also empowers a court with jurisdiction to review a final agency action to "hold unlawful and set aside agency action, findings and conclusions found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706; *see also Standard Oil,* 449 U.S. at 245.

The ALJ, the Assistant Secretary, and the parties have treated the administrative summary disposition procedures as analogous to Rule 56 summary judgment practice in the federal district court. In the civil context, denials of partial summary judgment are generally considered interlocutory orders, not subject to immediate review.  *See Aldy v. Valmet Paper Mach.,* 74 F.3d 72, 75 (5th Cir.), *cert. denied,* 519 U.S. 817 (1996).  Courts have analogized the requirement of "final agency action" in § 10(c) of the APA to the final judgment requirement of 28 U.S.C. § 1291.  *See DRG Funding Corp. v. Secretary of Housing and Urban Dev.,* 76 F.3d 1212, 1220 (D.C. Cir. 1996) (Ginsburg, J., concurring) ("Our analysis of the finality requirement imposed by the APA is properly informed by our analysis of that requirement in § 1291. . . . 'To effectuate [their] common purpose, courts have permitted interlocutory appeals under both statutes only in exceptional cases, a requirement that partakes of similar meanings in both contexts.'"); *State of Alaska*

_____

action."  5 U.S.C. § 704.

11

*v. Federal Energy Regulatory Comm'n,* 980 F.2d 761, 763-64 (D.C. Cir. 1992). *See also Newport Shipbuilding & Repair, Inc. v. Roundtree,* 723 F.2d 399, 400 (5th Cir.) (en banc) (the required finality for reviewability of order of Benefits Review Board under LHWCA follows "the contours of the finality-requirement under 28 U.S.C. § 1291 for appealability of decisions of the district courts"), *cert. denied,* 469 U.S. 818 (1984)*; Coca-Cola Co. v. Federal Trade Comm'n,* 475 F.2d 299, 304 (5th Cir.) ("If trial courts are insulated from this kind of interference, . . . certainly administrative tribunals ought to be and, indeed, they generally have been immune from interlocutory review of procedural rulings."), *cert. denied,* 414 U.S. 877 (1973). While the Judicial Code contains exceptions allowing appeals from interlocutory district court orders (FED. R. CIV. P. 54(b), 28 U.S.C. § 1292(b)), the APA has no such exception for interlocutory agency decisions. *See DRG Funding,* 76 F.3d at 1215; *State of Alaska,* 980 F.2d at 764.

The Supreme Court has declared that the denial of judicial review, where the order sought to be reviewed only affects rights adversely "on the contingency of future administrative action," "does not derive from a regard for the special functions of administrative agencies." *Rochester Tel.,* 307 U.S. at 130, 131. Instead, such judicial abstention over tentative or interlocutory administrative orders "is merely an application of the traditional criteria for bringing judicial action into play. Partly, these

12

have been written into [the 'Cases' and 'Controversies' section of] Article 3 of the Constitution. . . . Partly they are an aspect of the procedural philosophy pertaining to the federal courts whereby, ever since the first Judiciary Act, Congress has been loathe to authorize review of interim steps in a proceeding." *Id.* at 131.

The Assistant Secretary's April 1996 Decision and Remand Order ruling in favor of the OFCCP and against American on four of its defenses did not decide the merits of the OFCCP's administrative complaint against American for discriminatory employment practices in violation of § 503. The Assistant Secretary's order did not complete the administrative proceedings, nor was it meant to do so. After rejecting four of American's defenses, the Assistant Secretary remanded to the ALJ for further proceedings on the merits of the OFCCP's complaint. Agency orders which remand to an administrative law judge for further proceedings are not final orders subject to judicial review. *See Newpark Shipbuilding,* 723 F.2d at 406. The DOL has not yet made a final determination on the two issues which are at the heart of the present controversy: whether American violated § 503 and its implementing regulations by discriminating against qualified disabled job applicants; and, if so, whether sanctions are appropriate, and whether American is liable for make-whole relief for individual victims of disability-based discrimination. *See Pennzoil Co. v. Federal Energy Regulatory Comm'n,* 742 F.2d 242, 244 (5th Cir. 1984). Guided by

the foregoing authorities, we conclude that the Assistant Secretary's disposition was tentative or otherwise interlocutory in nature. Therefore, the decision is not a final agency action because it did not "mark the 'consummation' of the agency's decisionmaking process." *See Spear,* 520 U.S. at 177-78.

The foregoing general rules are tempered by the Supreme Court's "pragmatic" and "flexible" finality analysis. In *Federal Trade Commission v. Standard Oil of California,* 449 U.S. 232 (1980), the Supreme Court reworked its rigid test for judicial review of agency decisions established in *Abbott Laboratories,* replacing it with a new "finality" analysis for determining the reviewability of interlocutory agency decisions. In *Standard Oil*, the Federal Trade Commission ("FTC") filed an administrative complaint against the respondent, Standard Oil of California ("Socal"), alleging that the company had violated the Federal Trade Commission Act ("FTC Act") by conspiring with other oil producers to fix gasoline prices. *Id.* at 234. While an adjudication of the complaint's charges were pending before an administrative law judge, Socal unsuccessfully moved to have the FTC withdraw its complaint. *Id.* at 234-35 & n.4. Thereafter, Socal filed a complaint against the FTC seeking an order declaring that the issuance of the complaint was unlawful and requiring that the complaint be withdrawn. *Id.* at 235.

The Supreme Court in *Standard Oil* found the exhaustion

14

doctrine to be of only limited usefulness in the context of deciding the reviewability of interlocutory agency decisions. According to the Court, exhaustion requires only that a party seeking review appeal the decision at issue through all available administrative channels. *Id.* at 243. The Court noted that the respondent, Socal, which argued that it had exhausted its administrative remedies by moving in the adjudicatory proceedings for dismissal of the complaint, had "mistaken exhaustion for finality." *Id.* According to the Court, while Socal admittedly may have exhausted its administrative remedies, the FTC's refusal to dismiss its complaint "d[id] not render the complaint a 'definitive' action" because it did not "augment the complaint's legal force or practical effect upon Socal[,] [n]or d[id] the refusal diminish the concerns for efficiency and enforcement of the Act." *Id.* The Court reasoned that the averments in the administrative complaint served only as a "prerequisite" to the "definitive agency position," which would be "whether Socal violated the Act." *Id.* at 241-42.

The Court concluded that the issuance of the complaint alleging that Socal violated the FTC Act was not a "final agency action" under the APA because: (1) it was not a definitive ruling or regulation; (2) it had no legal force or practical effect on Socal's daily business other than the disruptions that accompany any major litigation; and (3) immediate review would serve neither

15

efficiency nor enforcement of the FTC Act. *Id.* at 243.

The Court then proceeded to address Socal's additional arguments that: (1) without immediate judicial review it would be irreparably harmed, and its challenge would be insulated from any review if considered along with the FTC's decision on the merits; and (2) its claim of illegality in the issuance of the complaint was a "collateral order" subject to immediate review.

The *Standard Oil* Court disagreed with Socal's assertion that it would be irreparably harmed by the expense and disruption of defending itself in protracted adjudicated proceedings. *Id.* at 244. While the Supreme Court had no doubt "that the burden of defending this proceeding [would] be substantial," it declared that "'the expense and annoyance of litigation is "part of the social burden of living under government."'" *Id.* (quoting *Petroleum Exploration, Inc. v. Public Service Comm'n of Ky.,* 304 U.S. 209, 222 (1938)). The Court reiterated that "'[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury.'" *Id.* (quoting *Renegotiation Bd. v. Bannercraft Clothing Co.,* 415 U.S. 1, 23 (1974)).

The Court also pointed out that because § 10(c) of the APA (5 U.S.C. § 704) provides that "preliminary, procedural, or intermediate agency action" that is not directly reviewable is subject to review on the review of final agency action, and because § 10(e) (5 U.S.C. § 706) empowers a court of appeals to "hold

16

unlawful and set aside agency action . . . found to be . . . without observance of procedure required by law," a court of appeals reviewing any cease and desist order "has the power to review alleged unlawfulness in the issuance of a complaint." *Id.* at 245.[7]

Finally, the Court rejected Socal's argument that its claim that the FTC unlawfully filed a complaint against it was subject to review under the "collateral order doctrine" of *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541 (1949).[8] According to the Court, issuance of the complaint by the FTC "is a step toward, and will merge in, the Commission's decision on the merits. Therefore, review of this preliminary step should abide review of the final order." *Standard Oil,* 449 U.S. at 246.

This court in *Pennzoil Co. v. Federal Energy Regulatory Commission,* 742 F.2d 242 (5th Cir. 1984), used a similar analysis in addressing the "finality" requirement in its context as one of

---

[7] The Court also pointed out that because "one of the principal reasons to await the termination of agency proceedings is 'to obviate all occasion for judicial review,' . . . the possibility that Socal's challenge may be mooted in adjudication warrants the requirement that Socal pursue adjudication, not shortcut it." *Id.* at 244 n.11.

[8] A collateral order is a conclusive decision by a trial judge on an important issue completely separate from the merits of the case, such as a procedural or evidentiary question, that is effectively unreviewable on appeal from a final judgment. *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468 (1978).

17

the four "ripeness" factors outlined in *Abbott Laboratories*.[9]  In

*Pennzoil,* a case procedurally similar to the present case, this

court refused to review an "interlocutory order" of the FERC,

denying summary judgment in a proceeding under the National Gas Act

because the Commission's order was not "ripe" for review under the

*Abbott* test.  Although *Pennzoil* applied a "ripeness" test, it is

instructive because the court examined one of the criteria for

determining whether an issue is ripe for review, i.e., whether the

challenged agency action constitutes "final agency action" within

the meaning of the APA.  *Id.* at 244.  This court concluded that

review was inappropriate because:

> [t]he Commission has not yet made a final
> determination on the two issues which are at
> the heart of the present controversy. . . . At
> this point in the proceeding the Commission
> has, at most, simply denied Pennzoil's Motion
> For Summary Judgment.  The Commission will
> have another opportunity to rule on Pennzoil's
> contentions when it reviews the ALJ's decision
> at the conclusion of the proceeding before
> him.  Were we to intervene with judicial
> review at this stage in the proceeding, we
> would be "den[ying] the agency an opportunity
> to correct its own mistakes and to apply its

---

[9] Because "finality" is only one of the four "ripeness" factors, an agency action may be final without being ripe. *Dow Chem. v. United States Envtl. Protection Agency,* 832 F.2d 319, 324 n.30 (5th Cir. 1987).  Thus, even when an interlocutory agency decision is "final," this court has long imposed a ripeness requirement, even where the statute authorizing its review did not do so. *See Texas v. United States Dept. of Energy,* 764 F.2d 278, 283 (5th Cir.), *cert. denied*, 474 U.S. 1008 (1985).  Because we conclude that the Assistant Secretary's Decision and Remand Order is not a "final agency action," we need not address whether the decision is ripe for our review.

18

> own expertise." Moreover, such piecemeal judicial review before the agency has an opportunity to express its final views would contravene the sound policies favoring judicial and administrative economy.

*Id.* at 244-45 (internal citation omitted) (quoting *Standard Oil,* 449 U.S. at 242).

In light of these authorities, we now turn to American's arguments in support of judicial intervention in the ongoing administrative proceeding, applying the *Standard Oil* "pragmatic" factors to be used in assessing finality, which include: (1) the legal and practical effect of the agency action; (2) the definitiveness of the ruling; (3) the availability of an administrative solution; (4) the likelihood of unnecessary review; and (5) the need for effective enforcement of the Act. *Standard Oil,* 449 U.S. at 242-43.

American argues that forcing it to wait to litigate "seminal issues" until the parties try 96 cases of alleged disability discrimination is "outrageous" and a "huge waste of agency and judicial resources." However, as the Supreme Court has emphasized, the expense and annoyance of litigation does not constitute irreparable injury that would justify an exception to the finality rule. *Id.* at 244; *see also Pennzoil*, 742 F.2d at 244 ("'[T]he only impact which [Pennzoil] . . . would suffer if [the order] . . . is not now reviewed is delay in final resolution of the . . . proceedings now in progress.' We do not believe that the burden of

19

participating in the proceeding before the ALJ is sufficient to constitute the requisite irreparable harm to Pennzoil."). Furthermore, because the administrative proceedings are ongoing, the effect of judicial review "is likely to be interference with the proper functioning of the agency and a burden for the courts. . . . Intervention also leads to piecemeal review which at the least is inefficient and upon completion might prove to have been unnecessary." *Standard Oil,* 449 U.S. at 242. *See also Pennzoil,* 742 F.2d at 244-45.

American also argues that it would be futile for it to pursue the administrative process because the DOL already has "finally and definitively rejected each of American's challenges to its statutory and regulatory authority." However, "[t]he requirement that the reviewable order be 'definitive' in its impact on the rights of the parties is something more than a requirement that the order be unambiguous in legal effect. It is a requirement that the order have some substantial effect <u>which cannot be altered by subsequent administrative action</u>." *Atlanta Gas Light Co. v. Federal Power Comm'n,* 476 F.2d 142, 147 (5th Cir. 1973) (emphasis added); *Pennzoil,* 742 F.2d at 245 ("We are disinclined to review the Commission's order at this point since it has no direct and immediate impact on Pennzoil that cannot be altered by subsequent Commission action. . . ."). In the present case, American may prevail on the merits in the administrative action, thereby mooting

20

its judicial challenge. This possibility warrants the requirement that American pursue administrative adjudication, not shortcut it. *See Standard Oil,* 449 U.S. at 244 n.11.[10]

Moreover, as the Supreme Court reasoned in applying an analogous statutory requirement of a final agency decision (§ 205(g) of the Social Security Act), "a 'final decision' is a statutorily specified jurisdictional prerequisite. The requirement is, therefore, . . . something more than simply a codification of the judicially developed doctrine of exhaustion, <u>and may not be dispensed with merely by a judicial conclusion of futility</u>. . . ." *Weinberger v. Salfi,* 422 U.S. 749, 766 (1975) (emphasis added).[11]

---

[10] "[O]ne of the principal reasons to await the termination of agency proceedings is 'to obviate all occasion for judicial review.'" *Id.*

[11] In an earlier case, the Supreme Court elaborated on practical reasons for rejecting specious futility arguments based on probabilities rather than on certainty:

> It is urged in this case that the Commission had a predetermined policy on this subject. . . . While this may well be true, the Commission is obliged to deal with a large number of like cases. Repetition of the objection in them might lead to a change of policy, or, if it did not, the Commission would at least be put on notice of the accumulating risk of wholesale reversals being incurred by its persistence.

*United States v. Los Angeles Tucker Truck Lines, Inc.,* 344 U.S. 33, 37 (1952) (*quoted in Power Plant Div., Brown & Root v. Occupational Safety and Health Review Comm'n,* 673 F.2d 111, 115 (5th Cir. Unit B 1982) (noting that "we are dealing with a case of only 'probable' futility, that is, a case where the Commission is empowered to accept the omitted argument but is unlikely to do so. Where the Commission would be without power or authority to act on the objection, however, an extraordinary circumstance might exist.")).

21

Other than imposing on American the burden of defending itself in the administrative proceeding, American has not explained how the Assistant Secretary's order has had a "direct and immediate impact" upon American by affecting or determining its rights and obligations. The intermediate decision of the DOL has no "legal force or practical effect" on American's daily business other than the disruption of litigation. *See Standard Oil,* 449 U.S. at 243. This is not a case in which "no further administrative proceedings are contemplated." *See Abbott Labs.,* 387 U.S. at 149. Further proceedings are required before the DOL can issue an order which has conclusive legal consequences. The pending administrative proceedings which American seeks to have courts short-circuit will determine American's ultimate rights and obligations, and, may avert judicial review altogether.

Hence, the Assistant Secretary's interlocutory order denying American's motion for summary judgment is not a "final agency action" necessary to invoke immediate review under the APA.

## B. The *Leedom v. Kyne* Exception to Finality

Although the requirement of a "final agency action" in APA § 10(c) is a statutory bar to judicial review, American asks that we apply the narrow exception set forth in *Leedom v. Kyne,* 358 U.S. 184 (1958), that permits judicial intervention -- even when the relevant statutory language precludes jurisdiction -- when an agency exceeds the scope of its delegated authority or violates a

22

clear statutory mandate.  *See Kirby Corp. v. Pena,* 109 F.3d 258, 268 (5th Cir. 1997).  American argues that under *Kyne,* this court has jurisdiction to decide American's challenge that the DOL has exceeded its statutory authority under § 503 by administratively prosecuting American for discriminatory employment practices.

Courts, however, generally have interpreted *Kyne* as sanctioning the use of injunctive powers only in a very narrow situation in which there is a "plain" violation of an unambiguous and mandatory provision of the statute.  *See Boire v. Miami Herald Pub. Co.,* 343 F.2d 17, 21 (5th Cir.), *cert. denied,* 382 U.S. 824 (1965).  Under *Kyne,* access to the courts is accorded only if the agency's interpretation "is infused with error which is of a *summa* or *magna* quality as contraposed to decisions which are simply *cum* error.  Only the egregious error melds the [agency's] decision into justiciability.  Lesser malignancies thwart the jurisdiction of the courts." *United States v. Feaster,* 410 F.2d 1354, 1368 (5th Cir. 1969).  Finally, the exception allowing review of an "agency action allegedly 'in excess of authority' must not simply involve a dispute over statutory interpretation. . . . [T]he agency's challenged action [must be] so contrary to the terms of the relevant statute that it necessitates judicial review independent of the review provisions of the relevant statute." *Kirby,* 109 F.3d at 269 (citing *Kyne,* 358 U.S. at 188).

In *Kyne,* moreover, the lawlessness of the agency's action was

23

conceded by the agency itself. *Kyne,* 358 U.S. at 187.[12] *See also Oestereich v. Selective Serv. Sys. Local Bd. No. 11,* 393 U.S. 233, 237-38 (1968) ("We deal with conduct of a local [Selective Service] Board that is basically lawless. . . . The case we decide today involves a clear departure by the Board from its statutory mandate."). In the present case, American's challenge to the Assistant Secretary's decision that § 503 and the DOL's regulations authorize the OFCCP to bring an administrative proceeding against American for violations of the nondiscrimination obligations in its government contract involves a dispute over whether an agency charged with a statute's implementation has interpreted it correctly, which is not the sort of "egregious" error envisioned by the Supreme Court in *Kyne.*

Moreover, an important element underlying the decision in *Kyne* was the fact that the Board's egregious disregard for the plain words of the Act would wholly deprive the union of a meaningful and adequate means of vindicating its rights. *See MCorp,* 502 U.S. at 43. *Kyne* is inapposite here because § 10(e) of the APA expressly provides American with a meaningful and adequate opportunity for judicial review of the validity of the DOL regulations. *See* 5

---

[12] *Kyne* involved an action in district court challenging a determination by the National Labor Relations Board that a unit including both professional and nonprofessional employees was appropriate for collective-bargaining purposes -- a determination in direct conflict with an explicit provision of the National Labor Relations Act. *See Board of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc.,* 502 U.S. 32, 42 (1991).

U.S.C. § 706.  If and when the Administrative Review Board finds that American has violated the Act and its regulations, American will have, in the court of appeals, "an unquestioned right to review of both the regulation and its application."  *See McCorp*, 502 U.S. at 43-44.

For the foregoing reasons, American's challenge does not fall within the narrow *Kyne* exception to the rule precluding direct review of nonfinal agency orders.  Therefore, the district court's failure to dismiss American's complaint for lack of subject matter jurisdiction cannot be justified as a proper application of that rarely invocable precedent.

### III. CONCLUSION

Neither the ALJ, the Assistant Secretary, nor the Administrative Review Board has ruled on the merits of the OFCCP's claim that American discriminated in employment on the basis of disability.  Thus while the Assistant Secretary tentatively has affirmed the OFCCP's authority to administratively enforce American's federal contractual obligation not to discriminate based on disability, he has not yet considered whether American violated its contractual duty, and if so, what sanctions or individual remedies are appropriate.  If the DOL's administrative review ends with the conclusion that American has not breached its contractual obligation not to discriminate, American will have no reason to seek a judicial determination of the OFCCP's enforcement authority.

25

Grants of partial summary disposition by an agency are generally considered interlocutory orders not subject to immediate review. American has not demonstrated that it will suffer irreparable injury that cannot be remedied by petitioning for review at the conclusion of the administrative proceedings. Accordingly, we reverse the district court's judgment, and dismiss the complaint for lack of subject matter jurisdiction.

REVERSED and DISMISSED FOR LACK OF JURISDICTION