**PUBLIC CITIZEN, et al., Petitioners,**

v.

**NUCLEAR REGULATORY COMMISSION and United States of America, Respondents,**

**Nuclear Utility Management and Resources Committee, Intervenor.**

**No. 87–1050.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 19, 1987.

Decided May 6, 1988.

---

Eric R. Glitzenstein, Washington, D.C. with whom, David C. Vladeck and Alan B. Morrison, Washington, D.C. were on the brief for petitioners.

Karla D. Smith, Atty., Nuclear Regulatory Com'n, with whom, Peter R. Steenland, Jr., Chief, Appellate Section, U.S. Dept. of Justice, William C. Parker, Gen. Counsel, Nuclear Regulatory Com'n, William H. Briggs, Jr., Sol., Nuclear Regulatory Com'n, E. Leo Slaggie, Deputy Sol., Nuclear Regulatory Com'n and Alice Thurston, Attorney, U.S. Dept. of Justice, were on the brief for respondents.

Milton Eisenberg, with whom, Marcus A. Rowden, was on the brief for intervenor, Nuclear Utility Management and Resources Committee. John T. Boese, Washington, D.C. also entered an appearance for intervenor, Nuclear Utility Management and Resources Committee.

Before MIKVA and WILLIAMS, Circuit Judges, and GORDON,* District Judge.

Opinion for the Court filed by Circuit Judge WILLIAMS.

WILLIAMS, Circuit Judge:

In this action Public Citizen and five other public interest organizations challenge the Nuclear Regulatory Commission's implementation of § 306 of the Nuclear Waste Policy Act of 1982 ("Waste Act"), 42 U.S.C. § 10226 (1982). Petitioners contend that § 306 requires the Commission to promulgate binding regulations for the training and qualifications of nuclear power plant personnel. NRC argues that its non-binding Policy Statement of March 20, 1985 satisfied its duties under § 306.

Petitioners filed the action in the district court on November 24, 1986, seeking a writ of mandamus. The district court transferred the case here because of doubts as to where jurisdiction lay. In fact, we conclude, neither court has jurisdiction. Viewed as a direct challenge to the Policy Statement, the petition was too late, under either of the two statutes providing jurisdiction: the 180–day time limit of the Waste Act, 42 U.S.C. § 10139(c) (1982), or the 60–day limit of the Hobbs Act, 28 U.S. C. § 2342(4) (1982).

Petitioners' alternative jurisdictional route is also blocked. Public Citizen wrote to the Commission on April 15, 1986, calling on it to initiate a rulemaking proceeding to comply with § 306. The Commission treated this as a petition for rulemaking

---

* Of the United States District Court for the Eastern District of Wisconsin, sitting by designation

pursuant to 28 U.S.C. § 294(d).

and denied it on January 14, 1987. Assuming without deciding that review of that denial could supply any part of what petitioners want—substantive review of the legal adequacy of the Policy Statement—, we find that we still lack jurisdiction over the denial. Petitioners' suit was filed more than seven weeks *before* January 14, 1987. The cases establish that premature suits for review of agency decisions must be dismissed even when the passage of time supplies the item missing at the time of filing—here, an agency decision. Application of those precedents seems especially appropriate here; it would be pure fiction to treat the 1986 suit as a claim for review of the 1987 decision.

## I. Too Late

 The only bases alleged for subject-matter jurisdiction are the Waste Act and the Hobbs Act. The former affords the courts of appeals jurisdiction to review certain "final decision[s] or action[s] of ... the [Nuclear Regulatory] Commission," as well as the "failure of ... the Commission to make [certain] decision[s], or take [certain] action[s]...." 42 U.S.C. § 10139(a)(1)(A) and (B). An action for review under this section "may be brought not later than the 180th day after the date of the decision or action or failure to act involved...." *Id.* § 10139(c). It is not altogether clear that this section supplies jurisdiction for any claim under § 306, for it appears in Subchapter I of the Waste Act, and refers to action and inaction under *"this part,"* while § 306 appears in Subchapter III. In *General Electric Uranium Management Corp. v. DOE,* 764 F.2d 896 (D.C. Cir.1985), however, we found § 10139 to provide jurisdiction to review another claim under Subchapter III, so it may well encompass a § 306 claim. But we need not consider the point. Petitioners' suit was filed well beyond the 180–day limit, and, for the reasons given below, the theory by which they would circumvent that limit (and the Hobbs Act's) is plainly inadequate.

The Hobbs Act gives courts of appeals "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to deter-mine the validity of ... all final orders" of the NRC made reviewable by 42 U.S.C. § 2239. 28 U.S.C. § 2342(4). (§ 2239(a)(1) provides for review of orders entered in "any proceeding for the issuance or modification of rules and regulations dealing with the activities of licensees....") The Hobbs Act further specifies that "[a]ny party aggrieved by the final order may, within 60 days after its entry, file a petition to review the order...." 28 U.S.C. § 2344.

Clearly the difference between 60 and 180 days is irrelevant in this case, for the suit was filed long after expiration of the longer time limit. But petitioners argue that they are not barred by either of these deadlines because they are not challenging the Policy Statement itself, but rather NRC's *ongoing* failure to promulgate binding regulations pursuant to § 306. Under petitioners' logic, the mere issuance of a policy statement could not start the time clock running.

For support petitioners rely on the line of cases involving an unreasonable delay of agency action. *See, e.g., Telecommunications Research & Action Center v. FCC,* 750 F.2d 70 (D.C.Cir.1984) *("TRAC").* They characterize the present case as equally involving a lack of agency action. (Indeed, they framed their cause of action as a claim that NRC had violated § 306 by not "establishing instructional requirements for nuclear power plant licensee training programs," and had thus "unlawfully withheld agency action ... in violation of section 10(e) of the Administrative Procedure Act, 5 U.S.C. § 706." Joint Appendix ("J.A.") at 8.) They note that nowhere in *TRAC* did the court suggest that such actions were subject to any time limit; though true, the omission does not seem of great weight as there is no suggestion in the opinion that anyone raised the point. More persuasively, they argue that "[s]ince 'the very gravamen of the petitioners' complaint' in cases such as this one and *TRAC* is 'the *lack* of final' agency action required by law ..., it obviously makes no sense to suggest that such actions can be restricted by the time limits that will adhere once an agency *does* take final agency action." Re-

ply Brief for Petitioners at 5 (quoting *TRAC*, 750 F.2d at 75) (emphasis in petitioners' original).

We have some doubts about the argument even as a general matter. Where as here the statute requires agency action within a certain time limit, it is not obvious why the agency's inaction as of that date should not trigger the time limits of any statute on which the challengers rely for jurisdiction. This is especially so where the time limit expressly runs from the challenged "action or failure to act," as is true of 42 U.S.C. § 10139(c). However, since the courts may allow agencies some running room even where there are specific statutory deadlines, *see Sierra Club v. Thomas*, 828 F.2d 783, 788–90, 794 n. 78 (D.C.Cir.1987), conceivably courts may provide a parallel relaxation for persons complaining of inaction.

Whatever the hypothetical strength of petitioners' theory, it has no application here. The agency has acted. Its Policy Statement is a formal product of the Commission, published in the Federal Register, and expressly stating that it is "responsive to the mandate of the Nuclear Waste Policy Act for regulatory guidance on training and qualifications for nuclear power plant personnel [*i.e.*, § 306]." 50 Fed.Reg. 11,-147 (March 20, 1985). Representatives of the nuclear power industry state that it has relied on and sought to comply with the Statement, Brief for Intervenor at 12–13, and petitioners offer no reason to doubt that claim. Petitioners just do not like what the Commission did.

Indeed, Public Citizen has at times used language making clear that its attack is targeted on the sufficiency of the Policy Statement. It stated in its April 15, 1986 letter to the Commission: "We believe that the Commission Policy Statement on Training and Qualification of Nuclear Power Plant Personnel, published March 20, 1985, 50 Fed.Reg. 11147 ... [is] legally insufficient to fulfill the NRC's statutory obli-

gations." J.A. at 23. Moreover, petitioners' appellate briefs explicitly attack the Statement, arguing that in promulgating it "[t]he NRC has disregarded Congress' clear command that *it* develop training requirements for the nuclear industry to follow, and instead has given the industry virtual *carte blanche* to create its own training rules." Brief for Petitioners at 1 (emphasis in original).

Our acceptance of petitioners' argument would make a nullity of statutory deadlines. Almost any objection to an agency action can be dressed up as an agency's failure to act. We can imagine situations where an agency's effort to comply was so flimsy or unpublicized that affected parties could not be expected to grasp that it was attempted compliance. But this is not such a case. Accordingly, we find petitioners' challenge to the Policy Statement untimely.[1]

## II. Too Soon

The Commission treated Public Citizen's April 15, 1986 letter as a petition for a rulemaking, published it in the Federal Register, solicited and received public comments, and denied it on January 14, 1987. The denial was presumably reviewable. *See American Horse Protection Ass'n v. Lyng*, 812 F.2d 1 (D.C.Cir.1987). In the course of review of that denial this court might well entertain challenges to the legality of the Policy Statement. *See National Labor Relations Board Union v. Federal Labor Relations Authority*, 834 F.2d 191 (D.C.Cir.1987) (discussing extent to which a party may secure review of an agency decision, well after expiration of time limits on appeals, by petitioning for review and challenging the denial of the petition); *but see Eagle–Picher Industries v. EPA*, 759 F.2d 905, 911 (D.C.Cir.1985) (stressing extraordinary importance of enforcing congressional time limits on challenges to agency action; "[w]e have enter-

---

1. Petitioners also defend their foot-dragging on the ground that the Policy Statement may not itself be subject to judicial review. We find this argument meritless. While a policy statement is non-binding on an agency, *see McLouth Steel*

*Products Corp. v. EPA,* 838 F.2d 1317 (D.C.Cir. 1988), a party may challenge it as contrary to law, *see Panhandle Producers & Royalty Owners Ass'n v. Economic Regulatory Admin.,* 822 F.2d 1105 (D.C.Cir.1987).

tained untimely claims only in a limited number of exceptional circumstances").

Regardless of the extent to which petitioners might through this device secure the substantive review they seek, we are persuaded by NRC's argument that we are without jurisdiction to review petitioners' claim. Their suit was filed on November 24, 1986, 51 days before NRC's denial of the request for a rulemaking.

Petitioners say we should not be troubled by their gun-jumping, as the final decision was issued after the filing of the suit and is presently ripe for review. As then-Judge Scalia framed the issue in *Western Union Telegraph Co. v. FCC*, 773 F.2d 375, 377 (D.C.Cir.1985), this essentially requires us to determine whether the statutory time limits of the two statutes potentially supporting jurisdiction create mere "deadlines," allowing suit anytime before close of the stated period, or "windows," requiring that suit be filed no sooner than the trigger date and no later than the closing date. Actually, as *Western Union* itself held that the Hobbs Act created a window, *id.*, the question is open only as to the Waste Act. *See also Selco Supply Co. v. EPA*, 632 F.2d 863, 865 (10th Cir.1980), *cert. denied*, 450 U.S. 1030, 101 S.Ct. 1740, 68 L.Ed.2d 225 (1981) (holding that statutory language similar to that of the Hobbs Act created a window).

Petitioners note that while the Hobbs Act allows suits *"within 60 days after ...* entry" of the challenged order, the Waste Act says that suits are to be "brought *not later than the 180th day after* the date of the [challenged] decision." They point out that a suit filed before the order is literally "not later than" a period ending after the order. But in ordinary parlance, the same is true for the Hobbs Act's "within": a suit filed before an order is literally filed "within 60 days after" the order. Note that the Hobbs Act does not say "within the period framed by the order and 60 days thereafter," or any other language explicitly creating a window. Thus petitioners' argument requires us to attach controlling significance to what seems a minor linguistic variation.

It is true, and petitioners naturally stress the point, that in dictum Judge Scalia distinguished between the two phrases. He noted that if the Hobbs Act's "within" language were intended to create only a deadline, it was "inapt for such a purpose. If the intent were to establish a filing deadline rather than a filing window, it would more naturally have been phrased 'no later than 60 days after ... entry.'" *Western Union,* 773 F.2d at 377. This offhand remark hardly offers much support for petitioners' position that the Waste Act permits premature claims.

Moreover, the only provision of the Waste Act allowing a suit such as one challenging the Commission's January 14, 1987 decision clearly points against allowance of suits before the decision challenged. It allows actions "for review of any *final* decision" of the Commission, 42 U.S.C. § 10139(a)(1)(A) (emphasis added), not of a suspected or future decision or action.

It may seem odd to dismiss a suit because the claimant anticipated a statutory trigger date, where time has seemingly cured the defect. In *Western Union* Judge Scalia noted the point, but observed that dismissal in these circumstances was

no more anomalous than the situation which arises when petitions that are premature for *other* reasons are dismissed despite the fact that the prematurity of the court's reaching the issue (but not the prematurity of the *filing*) has been eliminated. For example, a challenge to now-final agency action that was filed before it became final must be dismissed. *See, e.g., Industrial Union Department, AFL–CIO v. Bingham*, 570 F.2d 965, 968–69 (D.C.Cir.1977) (per curiam); *Selco Supply Co. [v. EPA ]*, 632 F.2d [863] at 865 [ (10th Cir.1980), *cert. denied*, 450 U.S. 1030, 101 S.Ct. 1740, 68 L.Ed.2d 225 (1981) ].

773 F.2d at 378 (emphasis in original).

Many dismissals for prematurity have occurred in the context of the "race to the courthouse" created by 28 U.S.C. § 2112(a) (1982), *amended by* Act of Jan. 8, 1988, Pub.L. No. 100–236, 101 Stat. 1,732. This

statute provides for consolidation of suits challenging the same agency order in the court where "a proceeding with respect to such order was first instituted." Courts judging the winners of such races have dismissed challenges to final agency orders that were filed before the orders became final. *See, e.g., Associated Gas Distributors v. FERC*, 738 F.2d 1388 (D.C.Cir.1984); *Public Service Co. v. FERC*, 716 F.2d 778 (10th Cir.1983), *City of Gallup v. FERC*, 716 F.2d 1116 (D.C.Cir.1983), *modified on other grounds*, 726 F.2d 772 (D.C.Cir.1984); *Virginia Electric & Power Co. v. EPA*, 610 F.2d 187 (4th Cir.1979).

This case is in fact a much stronger one for dismissal on prematurity grounds than *Western Union*. There the FCC had actually released an order to the public before the petition was filed; the filing was premature only because the Commission had not yet "entered" the order within the meaning of the applicable statute and regulations (*i.e.*, by publishing it in the Federal Register). Here the petition clearly was filed before the action was final and ripe for review. Moreover, petitioners filed a full 51 days before the NRC's action was taken, whereas petitioners in *Western Union* filed only seven days too early. In fact, it is plain that the suit filed November 24, 1986 was not a challenge to denial of the rulemaking petition. Whatever injustice rigorous application of the rule may cause in the case of an ambiguous trigger date provision (such as *Western Union*'s), it causes none where the suit did not attack the action complained of, and the petitioners' characterization of it as such is just an *ex post facto* salvage job. "If [petitioners'] notice of appeal was not premature, no notice of appeal is premature." *United States v. Hansen*, 795 F.2d 35, 38 (7th Cir.1986) (Posner, J.). This is not a case where the early bird deserves the worm.

\*　　\*　　\*　　\*　　\*　　\*

We dismiss this case for lack of jurisdiction. Petitioners' suit was too late to challenge the Policy Statement and too early to challenge NRC's denial of their request for rulemaking.